IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSEPH G. BACA,

      Plaintiff,

vs.                                  No. CIV 05-192 WDS

JO ANNE B. BARNHART, Commissioner
of the Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing filed on June 27, 2005. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for disability insurance benefits or supplemental security income. The Court, having considered Plaintiff's Motion [docket # 7] and Memorandum Brief [docket # 8], Defendant's Response [docket # 12], Plaintiff's Reply [docket # 16], the administrative record and applicable law, finds that Plaintiff's Motion should be **DENIED,** and that this matter should be dismissed with prejudice.

## I. Background

Plaintiff, who was born on July 7, 1953, worked as a stocker at Wal-Mart, heavy equipment operator, and construction laborer before the onset of his alleged disability. Tr. 68. Plaintiff applied for Disability Insurance Benefits on February 13, 2003. Tr. 54-56. He alleged that he became disabled on February 10, 2003. Tr. 54. Plaintiff's application was denied at the initial level, Tr. 34, and at the reconsideration level. Tr. 35. Plaintiff appealed by filing a request for a hearing by an administrative law judge ("ALJ") on July 24, 2003. Tr. 46. The hearing before the ALJ was held on May 4, 2004, at which Plaintiff appeared represented by an attorney. Tr. 246-282. Plaintiff alleged

that he was disabled as a result of left lateral epicondylitis. Tr. 109, 67. In an opinion dated June 25, 2004, the ALJ rendered an unfavorable decision, finding that Plaintiff was not disabled. Tr. 12-23. Plaintiff then filed a request for review with the Appeals Council on September 30, 2004. Tr. 8. The Appeals Council denied Plaintiff's request for review on December 20, 2004, Tr. 4-6, and thereby rendered the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* 20 C.F.R. §§ 404.981, 416.1481

On February 5, 2005, Plaintiff filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). After consent by the parties, [docket # 2, 4] this case was reassigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## II.  Standard of Review

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.*  However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222,

224 (10th Cir. 1989).

A sequential five-step analysis applies in determining whether an adult claimant is disabled and entitled to benefits under the Social Security Act. *See Williams,* 844 F.2d at 750-52; 20 C.F.R. §§ 404.1520, 416.920. First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.*

The claimant is not disabled if he or she can perform past work. *Id.* If the claimant cannot perform past work, the analysis proceeds to step five, where the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity ("RFC") "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)). The claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

### III. Summary of the ALJ's Decision

At step one of the sequential five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 16. The ALJ found at step two that Plaintiff had the severe impairment of left lateral epicondylitis, and a non-severe impairment due to right lateral epicondylitis. Tr. 17. The ALJ found at step three that Plaintiff's impairments were not severe enough to meet or medically equal any of the Listings. Tr. 17. At step four, the ALJ concluded that Plaintiff retained the RFC to perform light exertional level work with no more than occasional reaching, pushing or pulling with the left arm, and no more than occasional fingering, feeling or handling with his left hand. Tr. 18. Given the RFC assessment, the ALJ found that Plaintiff could not perform his past relevant work. Tr. 20. However, at step five the ALJ concluded that there were a significant number of jobs in the national economy that Plaintiff could perform. Tr. 21. Plaintiff contends that the ALJ erred in determining that there were a significant number of jobs in the national economy that Plaintiff could perform.

### IV.  Discussion

1.      Whether the ALJ Erred in Determining That There Are a Significant Number of Jobs Available to Plaintiff.

In determining that Plaintiff was not disabled, the ALJ relied upon testimony from a vocational expert (VE) that Plaintiff was capable of performing work that existed in significant numbers in the national and regional economies, such as gate guard and case aid. (Tr. 20-21) The VE testified that there were 1,100 gate guard jobs in the regional economy, and 150,000 nationally; and there were 277 case aid jobs regionally, and 150,000 nationally. (Tr. 262-265) Plaintiff argues that the record does not support the ALJ's conclusion that there are a significant number of jobs available to Plaintiff. Specifically, the Plaintiff alleges that the ALJ ignored or misrepresented the testimony of the VE as

to the number of jobs that Plaintiff could do.  Defendant notes that the ALJ is only required to produce one occupation existing in significant numbers to carry the Commissioner's burden at Step 5 of the sequential evaluation.  *Evans v. Chater*, 55 F3d 530, 532 (10th Cir. 1995).  Defendant takes the position that even if the position of case aid was inappropriate for Plaintiff (which Defendant does not concede), there was substantial evidence to support the ALJ's conclusion that Plaintiff's RFC met the requirements of the gate guard position, and that gate guard jobs existed in sufficient numbers in the national and regional economies.

Plaintiff observes that the DOT description for gate guard contains the following language: "Inspects outgoing traffic to prevent unauthorized removal of company property or products." Plaintiff argues that, when asked about the above requirement, the VE testified, "If that was included in the job description, he would not be able to do that, Counselor." (Tr. 270)  Since the inspection requirement *is* included in the job description, it appears at first blush that the VE acknowledged that Plaintiff was physically incapable of performing the duties of a gate guard.  A review of the transcript reveals otherwise:

> Q:  Mr. Johnson, now looking at gate guard, DOT number 372.667-030.  All right.  Assume part of the job description is to inspect outgoing traffic to prevent unauthorized removal of company property or products. *Assume that the inspection involves carrying open boxes or containers of some sort that would require two hands and efficient use of an opening tool of some sort, a cutter of some sort.* Would an individual with the limitations of Mr. Baca be able to perform at sufficient persistence and pace to satisfy most employers' requirements? (Emphasis supplied)
>
> A:  If *that* was included in the job description, he would not be able to do that, Counselor.  I do  think that there might be some guard positions that might not require that much physical effort.  (Emphasis supplied)

When the language cited by Plaintiff in his brief is placed in context, it is apparent that when the VE used the word "that," he was not referring to the general "inspect outgoing traffic"

requirement of the DOT, as implied by Plaintiff, but to Plaintiff's hypothetical involving the use of two hands to carry boxes and the use of an opening tool to open them. Far from suggesting that Plaintiff could not perform the job of gate guard, the VE had testified in four different instances that the position of gate guard, as described in the DOT, was suitable for Plaintiff. (Tr. 264, 265, 266) Notably, Plaintiff's counsel developed no evidence that the hypothetical he presented to the VE reflected an actual requirement of the position.

As noted by both parties, there is no "bright line" test in the 10th Circuit establishing the number of jobs necessary to constitute a "significant number" for purposes of disability evaluation. *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). However, the Court agrees with Defendant's position that, weighing this Plaintiff's particular factual situation, 1,100 gate guard jobs regionally and 150,000 jobs nationally constitute a significant number. The Court further finds that there is substantial evidence to support the ALJ's conclusion that there are a significant number of jobs that Plaintiff could perform. (Tr. 22)

In view of the Court's findings above, it is unnecessary for the Court to reach Plaintiff's arguments regarding the ALJ's assessment of the number of case aid jobs available to Plaintiff, or the suitability of that job for Plaintiff.

### V.  Conclusion and Summary

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing [docket #7] is **DENIED,** and this matter shall be dismissed with prejudice.

                                              **W. DANIEL SCHNEIDER**
                                              **UNITED STATES MAGISTRATE JUDGE**